UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Denise Blomker, | Case No. 14-cv-174 (JRT/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Sally Jewell, Secretary of the United States Department of the Interior, | |
| Defendant. | |

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Sally Jewell's Motion to Dismiss/Motion to Dismiss for Lack of Jurisdiction (ECF No. 17) and Plaintiff Denise Blomker's Motion for Default Judgment (ECF No. 26). These motions have been referred to the undersigned magistrate judge for a report and recommendation to the Honorable John R. Tunheim, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1)(B). The Court heard oral argument on the motions on October 8, 2014. (*See* ECF No. 37.) Denise Blomker appeared *pro se*. D. Gerald Wilhelm, Assistant United States Attorney, appeared on behalf of Defendant Sally Jewell.

Based upon the record, memoranda, and the proceedings herein, the Court will recommend that Plaintiff's Motion for Default Judgment be denied and Defendant's Motion to Dismiss be granted.

1

## II. BACKGROUND

Plaintiff was employed for more than four years as a secretary in the Migratory Birds group of the U.S. Fish and Wildlife Service of the Department of the Interior (the "Department") until she was terminated on May 8, 2014. (*See* Compl. ¶¶ 10, 93.)[1] Plaintiff alleges that during that time, she was discriminated against because of her race, national origin, color, gender, disability, age, and sexual harassment, and was retaliated against for reporting this discrimination and harassment. (Compl. at p. 5, ECF No. 1.) On January 16, 2014, Plaintiff filed suit against Sally Jewell in her official capacity as Secretary of the U.S. Department of the Interior, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and the Age Discrimination in Employment Act of 1967, 42 U.S.C. §§ 621-34. (Compl. at p. 2, ECF No. 1.) Plaintiff has subsequently amended her Complaint six times. (*See* ECF Nos. 7, 10-12, 14, 15.)

Although Plaintiff indicated in her Complaint that she was alleging discrimination based on six different protected classes, as well as retaliation and sexual harassment, Plaintiff's factual allegations encompass at most three causes of action: discrimination based on disability, sexual harassment, and retaliation.

In support of her sexual-harassment claim, Plaintiff alleges that:

1) in February 2010, one of her coworkers, Tom Will ("Will"), pointed his finger a few inches away from her breasts and said "I can put a button there" (*id.* ¶ 10);

---

[1] The Complaint is found at ECF Nos. 1, 4, 7, 10-12, 14-1, and 15. The Court treats the Complaint as a whole and refers to it by paragraph numbers wherever possible. Where Plaintiff did not use paragraph numbers, the Court refers to the page numbers of the individual filings.

2) in September 2010, Will walked up to her while he had an erection and stood very close to her (*id.* ¶ 11);

3) in February and March 2010, Will played with candy loudly, which Plaintiff believed was to get her attention (*id.* ¶¶ 12, 17);

4) in December 2010, Will stood very close to her (*id.* ¶¶ 13, 15);

5) in April 2011, Will was on his cellphone outside her cubicle and briefly was standing in the way of her exiting the cubicle (*id.* ¶¶ 14, 16);

6) in November and December 2012, Richard Rottman ("Rottman") was "picking at the seam located in the crotch of his pants" while Plaintiff was talking to him (*id.* ¶ 36); and

7) in January 2013, Rottman had an erection while talking to Plaintiff (*id.* ¶ 36).

Plaintiff complained about Will, and in 2010 or early 2011, the Department told Will to have limited contact with Plaintiff. (*Id.* ¶ 14.) The Department also designed ways to avoid having Plaintiff and Will work together. (*Id.*) Neither Will nor Rottman were Plaintiff's supervisor. (*See generally id.*)

Plaintiff also states that "[s]exual harassment occurred" when Will blocked her from exiting her cube and when he played with candy loudly. (*Id.* ¶¶ 16, 17.) She refers to Will's actions as "blatant attacks on [her] in the workplace," (*id.* ¶ 37), and describes Rottman and Will as "the two men that solicited [her] for sex in the workplace – sexual harassment." (*Id.* ¶ 64.)

Plaintiff alleges that she suffers from diabetes, fibromyalgia, depression, anxiety, and posttraumatic stress disorder as a result of prior abuse. (*See, e.g.*, *id.* ¶¶ 19, 28, 31; *id.*

at p. 23, ECF No. 4.) With respect to action taken by the Department because of her disabilities, Plaintiff alleges:

1) Plaintiff was written up for being absent without leave when it appears she may have been at an appointment with her psychologist, which her supervisor was not aware of (*id.* ¶ 20);

2) Plaintiff was reprimanded for unplanned absences and stated that her supervisor was "not recognizing this is medical leave" (*id.* ¶ 29);

3) the Department was aware of her PTSD, anxiety, depression, and diabetes and was ignoring them (*id.* ¶¶ 53, 87, 90, 94);

4) Plaintiff was told that her absences, including FMLA absences, "would cause a problem with [her] performance appraisal grading" (*id.* ¶ 66); and

5) Plaintiff was reprimanded for calling in sick (*id.* ¶ 68).

In addition to these facts, Plaintiff repeats that she is "being discriminated against on the basis of . . . disability mental [sic] [.]" (*See, e.g.*, *id.* ¶ 36.) Plaintiff also states that she believes her termination "to be a result of [her] disability PTSD for past sexual trauma brought on by sexual harassment in the workplace by two men[.]" (*Id.* ¶ 93).

Plaintiff cites various situations that she alleges constitute retaliation for her reporting discrimination. The types of situations can be summarized as follows:

1) her work performance or work attendance was criticized and she feels that she has been unnecessarily blamed and criticized at work (*see, e.g., id.* ¶¶ 18-20, 22-26, 29, 30, 32, 37-42, 44A, 44C-D, 45-50, 53, 54, 59, 61, 65, 66, 68, 70-72, 75, 78-82, 84, 85, 87, 89);

4

2) she was not kept up-to-date on office news or invited to office events (*see, e.g.*, *id.* ¶¶ 19, 34, 55-57, 59, 60);

3) there was poor communication between her and her coworkers and supervisors (*see, e.g.*, *id.* ¶¶ 18, 19, 24, 34, 41, 44D, 52, 54, 63, 67, 83);

4) people were talking about her EEO complaints (*see, e.g.*, *id.* ¶¶ 28, 58, 73);

5) her coworkers sometimes did her job, especially when she was away from the office (*see, e.g.*, *id.* ¶¶ 44D, 44E, 44G, 56, 62, 63, 83, 88);

6) she had antagonistic relationships with her bosses (*see, e.g.*, *id.* ¶¶ 19, 23, 27, 29, 44B, 44D, 53, 54, 67-69, 75, 77, 78, 83, 91);

7) she did not receive a raise and was not permitted to take classes[2] (*see, e.g.*, *id.* ¶¶ 32, 33, 35, 76, 77); and

8) she was suspended and ultimately terminated (*see, e.g.*, *id.* ¶¶ 74, 93).

Regarding many of the more recent instances, Plaintiff states: "I believe this to be a result of the EEO complaints I have made and subsequent filing with the District Court." (*See, e.g.*, *id.* ¶¶ 76-86.)

Plaintiff was suspended for seven days in the beginning of February 2014. (*Id.* ¶ 74.) She was informed of the Department's intent to terminate her on April 10, 2014. (*Id.* at p. 2, ECF No. 12.) According to the Department's letter, this dismissal was based on Plaintiff: (1) calling her supervisor "a god-d[***]ed f[***]ing liar" and grabbing her

---

[2] Specifically, Plaintiff alleges that was denied the opportunity to attend a critical writing and critical thinking course, federal hiring flexibilities training, and a SGMP meeting. (*Id.* ¶¶ 76, 77.) She also implies that Will somehow impeded her ability to move into a different position, although she does not specify how. (*Id.* ¶ 33.)

supervisor's arm and twisting it; (2) stating that she would send copies of emails in her possession to the EEO and the court, which the Department viewed as an attempt at intimidation; and (3) copying unnecessary people on emails after having been repeatedly told to stop doing so. (*Id.* at pp. 3-5.) The Department also alluded to various verbal altercations and disciplinary warnings she had previously received. (*Id.* at pp. 2-3.) Plaintiff was terminated on May 8, 2014. (*Id.* ¶ 93.) With regard to her termination, Plaintiff states: "I believe this to be a result of the EEO complaints I have made (past and present) and subsequent filing with the District Court" and "I believe this to be a result of my disability PTSD for past sexual trauma brought on by sexual harassment in the workplace by two men. . . . Retaliatory actions in the workplace and dismissal were brought on because of the EEO complaints I have made, past and present." (*Id.* ¶¶ 92, 93.)

Although some of Plaintiff's claims reach as far back as 2010, the events detailed in paragraphs 74, 76-83, and 85-94 occurred on or after January 16, 2014, the date she initiated this action. Plaintiff filed complaints with the Equal Employment Opportunity Commission ("EEOC") with regard to at least some of her allegations. (*Id.* at pp. 3-4, ECF No 1.) It is not clear from the face of the Complaint (1) which allegations Plaintiff reported to the EEOC and (2) when she reported these allegations to the EEOC.[3]

---

[3] Defendant offers a declaration that she represents outlines Plaintiff's interactions with the EEOC and purports to include Plaintiff's EEOC filings and the EEOC's determinations with respect thereto. *(See* Decl. of Teresa Garrity, ECF No. 21.) The Court declines to consider the declaration and attached exhibits as being outside the pleadings. *See Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 798-801 (8th Cir. 2011) (reversing a grant of dismissal for failure to exhaust administrative remedies as an improper conversion into a grant of summary judgment where the

6

# III. ANALYSIS

### A. Plaintiff's Motion for Default Judgment

Plaintiff moves for default judgment against Defendant, asserting that Defendant has failed to plead or otherwise defend within the time allowed by the Federal Rules. Under the Federal Rules of Civil Procedure, a response to an amended pleading is due "within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3).

Plaintiff filed her original Complaint on January 16, 2014. The complaint was not served, however, until May 2, 2014, and her most recent amendment was sent by mail on June 19, 2014. Service by mail adds three days to the time allowed for a responsive pleading. *See* Fed. R. Civ. P. 6(d). Because the last amendment to the complaint was not mailed until June 19, 2014, Defendants had until July 7, 2014 to respond. *See* Fed. R. Civ. P. 6(a)(1)(C) (allowing an additional three days when service is by mail). Defendant mailed its motion to dismiss to Plaintiff on June 30, 2014 and Plaintiff apparently received it on July 5, 2014. Defendant's response was therefore timely and default judgment on the basis of a failure to respond in a timely fashion to the complaint is unwarranted. Accordingly, the Court recommends that Plaintiff's motion for default judgment be denied.

### B. Defendant's Motion to Dismiss

#### 1. Standard of Review

---

district court considered, among other documents, the documents plaintiff filed with the EEOC that defendant acquired through its own investigation).

To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Rather, the complaint must set forth sufficient facts to "nudge[] the[] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Stated differently, the plaintiff must "assert facts that affirmatively and plausibly suggest that [she] has the right [she] claims . . . , rather than facts that are merely consistent with such a right." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (citing *Twombly*, 550 U.S. at 554-57).

> In ruling on a Rule 12(b)(6) motion, a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the [claimant's] favor. Although the factual allegations in the complaint need not be pleaded in great detail, they must be sufficient to raise a right of relief above the speculative level.

*DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1101 (D. Minn. 2010).

"[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555 (citations and quotations omitted). However, the court "accept[s] as true the complaint's factual allegations and grant[s] all reasonable inferences to the non-moving party." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009).

### 2. Defendant's Exhaustion Argument

Defendant argues that Plaintiff has failed to exhaust the required procedural remedies for all of her claims. A public employee who desires to file a discrimination claim must follow a series of administrative procedures before being able to file a claim

in federal court. *See* 29 C.F.R. § 1614.105. Because the Court determines that Plaintiff has failed to allege facts sufficient to state a claim under any of her causes of action, *see infra*, it declines to consider Defendant's exhaustion argument. Even if Plaintiff met the administrative exhaustion requirements, she fails to state a claim upon which relief can be granted.

### 3. Complaint Alleges Facts Supporting Claims Only for Sexual Harassment and Disability Discrimination

Plaintiff's complaint asserts discrimination based on race, national origin, color, gender, disability, age, and sexual harassment. (Compl. at pp. 4-5, ECF No. 1.) Plaintiff's factual allegations, however, concern gender-based harassment, with a few references to Plaintiff suffering from a disability. Plaintiff's allegations do not suggest any other grounds for discrimination. Accordingly, the Court will recommend that Plaintiff's discrimination claims based on race, national origin, color, and age be dismissed.

### 4. Plaintiff Fails to State a Claim for Sexual Harassment

In support of her sexual-harassment claim, Plaintiff proffers statements about Will and Rottman once having erections while around her, Rottman picking at a seam in the crotch of his pants twice, and Will pointing his finger suggestively within a few inches of her breasts. She also states that Will stood close to her twice, briefly blocked the way out of her cubicle while he was on the phone, and played with candy loudly. These instances were interspersed throughout an almost three-year period between February 2010 and January 2013.

"Title VII does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 953 (8th Cir. 2011). "In order to establish a claim of hostile work environment sexual harassment by non-supervisory co-workers, a plaintiff must establish that (a) she belongs to a protected group; (b) she was subject to unwelcome sexual harassment; (c) the harassment was based on sex; (d) the harassment affected a term, condition, or privilege of employment; and (e) the employer knew or should have known of the harassment and failed to take proper remedial action." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 965 (8th Cir. 1999).

Moreover, the conduct at issue "'must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment.'" *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003) (quoting *Alagna v. Smithville R—II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003)). The workplace must be "permeated with discriminatory intimidation, ridicule and insult." *Scusa*, 181 F.3d at 966. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Jenkins v. Univ. of Minn.*, No. 13-cv-1548 (JRT/JJK), ---F. Supp. 3d---, 2014 WL 4824028, at *13 (D. Minn. Sept. 25, 2014) (quotation omitted). "Conduct that is not severe or pervasive enough to create an *objectively* hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (emphasis added). Thus, the conduct must be

both subjectively offensive to the person experiencing it, and objectively offensive to a reasonable person. *See id.* at 21-22.

Finally, an employer "cannot be vicariously liable for [a] co-worker's harassment." *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1123 (8th Cir. 2007). "An employer may be *directly* liable for a co-worker's harassment, however, if the employer knew or should have known of the conduct and failed to take proper remedial action." *Id.* (citing, *inter alia*, *Merritt v. Albemarle Corp.*, 496 F.3d 880 (8th Cir. 2007)).

Plaintiff's complaint fails to state a claim for sexual harassment. Although Plaintiff refers to Will's "blatant attacks" on her in the workplace, claims that Rottman and Will "solicited [her] for sex in the workplace," and states in her complaint that "[s]exual harassment occurred," the conduct she alleges is insufficient to rise to the level of actionable harassment. Plaintiff's allegation regarding Will pointing three inches away from Plaintiff's breasts and saying "I can put a button right there," is certainly concerning. A single sexually suggestive comment where Plaintiff's coworker did not physically touch her, while inappropriate, does not "reach the high threshold of so intimidating, offensive or hostile that it poisoned the work environment." *Crutcher-Sanchez v. County of Dakota*, 687 F.3d 979, 988 (8th Cir. 2012). Plaintiff's other allegations do not remedy this deficiency. Although the complaint asserts that Will and Rottman had erections when they were near her, nothing alleged in the complaint supports an inference that Will and Rottman's behavior was intentionally directed towards Plaintiff. Moreover, instances of a coworker standing near Plaintiff and playing

with candy near her desk fail to nudge Plaintiff's sexual harassment from conceivable to plausible.

On the face of the complaint, the complained-of behavior was not physically threatening or humiliating to Plaintiff, and Plaintiff does not allege that it interfered with her work performance. *See id.* at 960.  Although this behavior might have been vile or inappropriate, the facts alleged in the complaint do not rise to the level of actionable sexual harassment. Accordingly, the Court will recommend that Plaintiff's sexual-harassment claim be dismissed.

### 5. Plaintiff Fails to State a Claim for Discrimination Based on Disability

To establish a prima facie case under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101-213 ("ADA"), Plaintiff must show: "(1) an ADA-qualifying disability; (2) qualifications to perform the essential functions of her position with or without reasonable accommodation; and (3) an adverse employment action due to her disability." *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). "[M]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). Examples of adverse employment actions include "termination, cuts in pay or benefits, and changes that affect

an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Id.*

As a threshold matter, Plaintiff does not purport to bring a claim under the ADA. Even if Plaintiff had brought her claim under the ADA, however, she would fail to state a claim of discrimination on the basis of disability. Assuming, without deciding, that Plaintiff has a disability and that she was qualified to perform the essential functions of her former job, Plaintiff fails to establish that she suffered "an adverse employment action due to her disability." *Norman*, 606 F.3d at 459.

Plaintiff's termination constitutes an adverse employment action. *See Jackman*, 728 F.3d at 804. Plaintiff alleges no facts, however, that causally link her termination to her disability. Plaintiff plainly asserts that she is "being discriminated against on the basis of . . . disability mental [sic]" and that she "believes" that her disability is motivating the Department's actions. Plaintiff, however, fails to state any facts that could establish a causal connection between her disability and her termination. These mere "labels and conclusions . . . will not do." *Twombly*, 550 U.S. at 555 (quotations omitted).

Moreover, to the extent that Plaintiff bases her claim on assertion that she was criticized for her absences from work, being criticized for work absences does not cause a materially significant disadvantage to Plaintiff. No facts in the complaint allege that Plaintiff's working conditions were changed such that she was materially disadvantaged as a result of any mental disability that she suffers. Accordingly, the Court will recommend that the Plaintiff's claims based on discrimination due to disability be dismissed.

### 6. Plaintiff fails to state a claim for retaliation

Plaintiff asserts that she was retaliated against for her past EEOC activity and for filing this action. Much like Plaintiff's disability claim, however, Plaintiff fails to allege facts that rise to the level of an adverse employment action or that suggest a causal connection between Plaintiff's protected activity and the Department's actions.

"To establish a prima facie case of retaliation, an employee has the initial burden of establishing retaliation by showing that (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct. Further, retaliation must be the 'but for' cause of the adverse employment action." *Jackman*, 728 F.3d at 804 (citations omitted). "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Id.*

Plaintiff engaged in protected activity when she reported to the EEOC and filed suit in court. 42 U.S.C. § 2000e-3(a). With regard to adverse employment action, Plaintiff alleges that: (1) her work was criticized; (2) she was not kept up-to-date on office news and was excluded; (3) there was poor communication between her and her coworkers and supervisors; (4) her coworkers were talking about her EEOC complaints; (5) her coworkers sometimes did her job; (6) she had antagonistic relationships with her bosses; (7) she did not receive a raise and was not permitted to take classes; and (8) she was suspended and ultimately terminated.

Most of Plaintiff's allegations do not rise to the level of adverse employment actions. Having one's work criticized, not being invited to office parties, poor communications, and office gossip are not tangible changes in working conditions that create a material disadvantage. While being denied the opportunity to take classes may be a nascent instance of damaging "an employee's future career prospects," *see Jackman*, 728 F.3d at 804, there is no allegation that being denied this opportunity was a change from how Plaintiff was treated before she filed her EEO complaints. Not receiving a raise, suspension and termination, however, constitute adverse employment actions.

Although Plaintiff's lack of an allegedly deserved raise, suspension, and termination constitute adverse employment actions, the complaint alleges no facts that causally connect those actions on the part of Defendant to Plaintiff's protected activities. Plaintiff asserts that she believes her suspension and termination have resulted from the EEO complaints she has made and subsequent filing with the District Court. She does not, however, allege that the Department reprimanded her verbally or in writing for filing with the EEOC, that she was terminated soon after she filed this suit, that she met or exceeded all of the necessary criteria to receive a raise and was denied solely because of her EEO filings, or any other facts that would imply that the Department's motivation behind those actions was her involvement in protected activity. Plaintiff's subjective belief that the events are connected is insufficient to plead the causal connection necessary to state a claim for which relief can be granted. Accordingly, the Court will recommend that Plaintiff's claim for retaliation be dismissed.

## IV. RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Default Judgment (ECF No. 26) be **DENIED**;

2. Defendant's Motion to Dismiss/Motion to Dismiss for Lack of Jurisdiction (ECF No. 17) be **GRANTED**; and

3. This action be **DISMISSED.**


Date: January 22, 2015                    s/ Tony N. Leung
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *Blomker v. Jewell*
                                                Case No. 14-cv-174 (JRT/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **February 21, 2015**.